# JACOB E. GERDING

### *vs.*

## MARY M. BAIER, Administratrix.

*Death of Partner—Effect—Contract for Widow's Benefit.*

While ordinarily a partnership is dissolved by the death of one of the partners, the partners may by their contract provide otherwise.                                                                    p. 524

An application by a surviving partner for the appointment of a receiver for the business, based on allegations that irreconcilable differences had arisen between him and the administratrix of the deceased partner, his widow, *held* properly refused, it not appearing that there were differences as to the conduct of the business, or that the administratrix had interfered with its management, and the only and obvious purpose of the application being to escape from the obligation of a contract by which the widow of a deceased partner was to receive payments from the business for a designated period of years.         pp. 525, 526

A contract between two partners by which, in case of the death of one, the survivor should pay to the decedent's widow a percentage of the earnings of the survivor for a designated period of years, involved an obligation on such survivor's part to continue the business for that period, and to make such payments from his earnings therein.                                    p. 526

*Decided June 26th, 1923.*

Appeal from the Circuit Court No. 2 of Baltimore City (DUKE BOND, J.).

Bill by Jacob E. Gerding against Mary M. Baier, administratrix of the estate of Frederick J. Baier. From a decree dismissing the bill, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and OFFUTT, JJ.

*Le Roy Gerding* and *William H. Lawrence,* for the appellant.

*Herbert L. Grymes,* for the appellee.

Thomas, J., delivered the opinion of the Court.

The bill of complaint in this case, which was filed in Circuit Court No. 2 of Baltimore City on December 5th, 1922, by Jacob E. Gerding against the widow of Frederick J. Baier, deceased, as the administratrix of said decedent, alleges that the plaintiff was a co-partner of the said Frederick J. Baier, deceased, and engaged in the general printing business at 407 South Bond Street, in Baltimore City, under the firm name of J. E. Gerding Company; that the said Baier died on the 25th of September, 1922, and letters of administration were taken out by his widow, Mary M. Baier; that the said "business consists of machinery, type, paper, office furniture and outstanding debts"; that "irreconcilable differences have arisen between" the plaintiff and the said Mary M. Baier, and by reason of said "difficulty" the business has been much jeopardized, and it is to the best interests of the parties and the creditors of said partnership that the partnership should be terminated, and that a receiver be appointed to close out the partnership business, and that he, the plaintiff, has no adequate remedy at law. The prayer of the bill was for the appointment of a receiver to take charge "of all the partnership books and papers of accounts, goods and effects, and to collect the debts due thereto and to preserve and dispose of the same, under the directions" of the court, and for general relief.

The court below passed an order requiring the defendant to show cause on or before the day named therein why the relief prayed should not be granted, and the defendant promptly filed her answer, in which she admitted the co-partnership, the death of her said husband and the other matters stated in the first three paragraphs of the bill, but in reference to the differences charged to have arisen between her and the plain-

tiff she alleged, "that the only difference which has arisen between" her and the plaintiff "is the carrying into effect of a certain contract entered into" by the plaintiff and her deceased husband, under which she is entitled to receive certain weekly payments, &c., "out of the profits of the business," which contract, a copy of which was filed with her answer, the plaintiff "now desires to repudiate," and that there "is no sufficient reason in equity for the appointment of a receiver and the disposition of the business as sought by the bill of complaint."

The contract referred to in the answer and offered in evidence is as follows:

"December 20, 1907.

"To Whom It May Concern:

"We, the undersigned, trading as the J. E. Gerding Company, in the City of Baltimore, State of Maryland, do hereby mutually agree that in the event of the decease of either one of the undersigned, the survivor shall pay the widow of the deceased partner 50% (fifty per cent.) of the earnings of the survivor, said sum to be paid weekly or monthly and to continue for the space of five (5) years, at which time surviving partner can purchase widow's interest at half the valuation of plant at time of death. (In case said widow marries within the specified time of five years, then said payment shall cease immediately.) In case there is no widow, same to be paid to the children of the deceased or their guardians, valuation having been procured by at least three disinterested people. All monies in building associations and savings bank the widow shall receive half immediately.

           "J. E. Gerding.     (Signed)
           "Frederick J. Baier.     (Signed)

"Made this twentieth (20th) day of December, in the year of 1907."

The other evidence in the case, which consists of the testimony of the plaintiff, shows that he and his deceased partner

for a number of years prior and up to the time of his death each received from the business a salary of $75 per week; that in addition to their salaries they paid to their employees salaries amounting to $55 per week; that the plaintiff has conducted the business since Mr. Baier's death, and that in addition to his salary at $75 per week and the salaries of his employees amounting to $55 per week, he paid to the National Composition Company, in the month of November, 1922, between $160 and $180 for work that he "could not get out in time"; that the work that Mr. Baier did for the firm was that of a "compositor," and that according to the "union scale" it would cost about $42 a week to employ a "typesetter" or "journeyman" in his place; that the plaintiff has never tried to get any one in Mr. Baier's place, but has continued the business with the same force that they had before his death with the help of the National Composition Company, which the firm began to employ some time before Mr. Baier's death; that the business has declined "somewhat" in the past year owing to the falling off of the packing business; that the plaintiff could not tell what the profits of the business were in 1919, 1920 or 1921; that he "figured" a net profit of $1,000 "last year" over and above all salaries; that the company has no debts, and had $1,000 in bank at the time the plaintiff testified (December, 1922); that, according to the inventory and appraisement which the plaintiff had made, the plant of the company is worth $6,092.72 "as a running plant," and the company also owns two lots, which he valued at $700. There is no suggestion in the case that the defendant has interfered in any way with the plaintiff's management and conduct of the company's business, or that there has been any disagreement between them in regard to the same. It would seem from the testimony and argument of counsel that, according to the plaintiff's and defendant's construction of the contract referred to, the defendant is entitled to receive from the company an amount equal to fifty per cent. of the *salary* the plaintiff receives, and the plaintiff's

contention is that the company cannot afford to pay her that amount, notwithstanding the evidence shows that the business was conducted successfully while paying Mr. Baier twice that amount, and that the company can employ a competent person to do the work he did for about the remaining fifty per cent. of the salary he received and which the plaintiff is still receiving. The only and obvious purpose, therefore, of the bill is to avoid any obligation under the contract, which the plaintiff says he wrote at the instance of his deceased partner, and to the same end he has brought this appeal from the decree of the court below dismissing his bill.

Ordinarily a partnership is dissolved by the death of one of the partners. *Walker et al.* v. *House,* 4 Md. Ch. 39; 20 R. C. L. sec. 225, p. 989; 30 Cyc. 653; *Scholefield* v. *Eichelberger,* 7 Peters, 585; *Burwell* v. *Mandeville's Executor,* 2 Howard, 560; *Parnell* v. *Thompson,* 81 Kan. 119, 33 L. R. A. (N. S.), p. 668; *Uniform Partnership Act,* sec. 31, subsec. 4, art. 73 A of the Code. But it has been held that the partners may by their contract provide otherwise. In 20 *L. R. A., supra,* it is said: "In the absence of an express agreement to the contrary, every partnership is dissolved by the death of one of the partners, whether the partnership is one at will or for a fixed term. Where, as is often the case, the articles provide that the partnership shall not be dissolved by the death of a partner, such provision will be given effect by the courts." And it is said in 30 *Cyc. supra,* that the death of a partner "produces a dissolution of the firm, not only as to the estate of the deceased, but as to all the partners, unless the continuance of the partnership has been provided for by the agreement of the parties." In *Scholefield* v. *Eichelberger, supra,* the Supreme Court of the United States said, on page 594: "There is no doubt that the liability of a deceased partner, as well as his interest in the profit of the concern, may, by contract, be extended beyond his death; but without such stipulation, even in case of a partnership for a term of years (3 Madd. 245), it is clear that death dissolves

the concern." And in *Burwell* v. *Mandeville's Executor,*
*supra,* MR. JUSTICE STORY said: "By the general rule of
law every partnership is dissolved by the death of one of the
partners. It is true that it is competent for the partners to
provide by agreement for the continuance of the partnership
after such death. * * * A partner too may by his will pro-
vide that the partnership shall continue notwithstanding his
death; and if it is assented to by the surviving partner, it
becomes obligatory. * * * But, then, in each case, the agree-
ment or authority must be clearly made out." See also *Good-
burn et ux.* v. *Stevens et al.,* 5 Gill, 1, and *Parnell* v. *Thomp-
son, supra.* Sub-section (5) of section 4 of article 73 A of
the Code (Uniform Partnership Act) expressly provides:
"This article shall not be construed so as to impair the obli-
gation of any contract existing when the article goes into
effect," and if we assume that by reason of the contract be-
tween the plaintiff and his deceased partner the partnership
was not dissolved by the death of Mr. Baier, the question
remains whether under the pleadings and evidence in the
case the plaintiff is entitled to a decree dissolving the part-
nership or appointing a receiver. The only ground alleged in
the bill is that "irreconcilable differences have arisen" be-
tween the plaintiff and defendant, which jeopardize the busi-
ness of the company. In *Fooks* v. *Williams,* 120 Md. 440,
the Court said, in reference to a bill for the dissolution of
a partnership: "A bill of this character should not merely
allege irreconcilable differences between the partners, but
should also allege facts sufficient in their character to make
it apparent to the Court that, if supported by proof, the dif-
ferences were irreconcilable, and of such a nature as termi-
nated or seriously imperiled any further continuance of the
relation." Disregarding, however, any defect in the plead-
ings, there is no evidence to sustain the only ground upon
which relief is prayed, or to establish any other ground upon
which a court of equity would be justified in dissolving a
partnership or appointing a receiver to take charge of its

assets. The evidence entirely fails to show any differences between the plaintiff and the defendant as to the conduct of the company's business, or that she has in any way interfered with the plaintiff's management of it, or that the business cannot be continued without a loss to the parties interested.

Sub-section (4) and sub-section (c) of section 7 of article 73 A of the Code (Uniform Partnership Act), provide that "the receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment; * * * as an annuity to a widow or representative of a deceased partner," but whatever may be the true relation of the plaintiff and the defendant under the contract in question, it is a clear undertaking on his part to continue the business of the company for the period of five years from the date of Mr. Baier's death, and to pay the defendant, as his widow, during that time, unless she remarries, fifty per cent. of his, the plaintiff's, earnings in said business, and a court of equity will not aid him to escape an obligation which he has freely and voluntarily assumed, or intervene by the appointment of a receiver to take charge of and distribute the assets of the company except in the clearest case for the protection of the interests of all concerned. *Miller's Eq. Pro.,* secs. 635-636 and 637, and cases cited in the notes. We will, therefore, affirm the decree of the court below.

*Decree affirmed, with costs*