Abraham J. Gtehlihorr, J.
Defendants seek an order pursuant to rule 106 of the Rules of Civil Practice dismissing the three causes of action alleged in the complaint on the ground that none of them states facts sufficient to constitute a cause of action. Plaintiffs sue for an injunction restraining defendants from constructing on their property any building which would violate the terms of a certain agreement or the zoning laws. The area involved is the entire block hounded by 50th Street, Avenue of the Americas, 51st Street and Seventh Avenue.
Plaintiffs, Hotel Taft Associates and Hotel Taft Realty Company, are partnerships. They are, respectively, the owner and lessee of premises known as the Hotel Taft and an Annex thereto (hereinafter referred to as the “Taft property”). Plaintiff, Zeckendorf Hotels Corporation, is the sublessee and operator. The property covers the east side of Seventh Avenue from 50th to 51st Street and extends 200 feet easterly on the *369 south side of 51st Street and 100 feet easterly on the north side of 50th Street, with the center line of the block dividing the northerly and southerly portions. The defendants own the land contiguous to that of plaintiffs to a point distant 390 feet east of Seventh Avenue on both 50th and 51st Streets (hereinafter referred to as the 1 ‘ Boxy property”). To the east of defendants’ property, and fronting on Avenue of the Americas, is the Time and Life Building owned by Bock-Time, Inc.
The first cause of action alleges in substance that in 1925 the then owner of the Taft property undertook the construction of the Hotel Taft, and the then owner of the Boxy property prepared plans for the construction of the Boxy Theatre. The complaint alleges that in 1926 the then owners of the Taft property prepared plans for the construction of an Annex to the Hotel Taft. According to the complaint the plans for the Annex contemplated the construction of 19 stories and a penthouse to an elevation of approximately 241 feet, leaving open and unoccupied a 10-foot space between the rear of the Annex building and the rear of its lot line, starting on the roof of the first floor at an elevation of about 12 feet without any additional setbacks, so that the windows of the rear rooms of the Annex would face upon the open and unoccupied area. The complaint also alleges that the plans for the erection of the Boxy Theatre — the theatre had not yet been erected — called for the construction of the theatre flush on the rear lot line of its property and contiguous to the southerly line of the Taft property on which the Annex was to be constructed, the theatre to be constructed up to an elevation of about 71 feet.
The complaint then alleges that, in order to provide additional yard or court area for the Hotel Taft Annex and a permanent easement of light, air and view therefor, Boxy Theatres Corporation which then owned the Boxy property and Carbarn Corporation which then owned the Taft property entered into an agreement, hereinafter referred to as the “ Carbarn-Boxy Agreement ”. The agreement was duly recorded. A copy is annexed to the complaint and its terms incorporated therein as though fully alleged.
Paragraph 1‘ First ’ ’ of the agreement provides in substance that so long as the Boxy Theatre shall stand no building of greater height than the Boxy Theatre shall be erected on the “rear portion” of the Boxy property. The “rear portion” is defined as the area ‘ ‘ north of a line drawn parallel with and distant 50 feet southerly from the center line of the block between 50th and 51st Streets.”
*370 Paragraph “ Third ” of the agreement provides in substance that if the Boxy Theatre is demolished, no building shall thereafter be erected on a certain portion of the Boxy property, denominated in the agreement as the “ restricted area ”. The “ restricted area ” — upon which the owners of the Boxy property may not build — is computable and ascertainable according to a formula prescribed in paragraph ‘ ‘ Third ’
The formula is based on the major premise, implicit in paragraphs “ Third ” and “ Fourth” of the agreement, that yard or court space will be required by the zoning laws between the Taft property and a building to be erected on the Boxy property after demolition of the Boxy Theatre; and that so much of the “ restricted area ” as is necessary to provide such a court in compliance with the zoning laws, shall be reserved for that purpose.
Accordingly, the nature, size and extent of the “ restricted area ” is defined in paragraph “ Third ” as an “ area twice the number of square feet, less 1000 square feet, as shall and will be required by law or municipal ordinance for a rear yard or court ” (it being understood that the size of the restricted area “ increases at different levels above the street level ”, because of required setbacks). The northern boundary of the “ restricted ” area is described as the center line of the block; the easterly and westerly boundaries are described as the easterly and westerly lines of the Boxy property; and the southerly boundary is described as a line parallel to the center line of the block enclosing a space sufficient, at various levels, to provide the area required by the zoning laws for a rear yard or court. The agreement provides that its provisions shall bind the. successors and assigns of the respective parties.
In paragraph “Fourth” the agreement provides that, so far as permitted by the municipal authorities, any owner of the Taft property may take “ any advantage ” of the provisions of the agreement so as “ to diminish the yard or court area required [by the zoning laws] for any building” to be erected on the Taft property. Paragraph “ Fourth ” also emphasizes the intent of the parties to assure to the owners of the Taft property a yard or court area that would, at the time of construction on the Taft property, meet the requirements of the zoning laws at the expense of the yard or court area on the Boxy property in excess of that required by its owners to meet the. zoning laws with respect to construction on its property.
The complaint alleges that both the Taft property and the Boxy property are located in a B Area District and a Class Two Height District under the Zoning Besolution of the City of *371 New York; that the Boxy Theatre was demolished in December, 1960, and that defendants in the same month acquired title to the Boxy property; that plans for a new 23-story office building with an elevation of about 248 feet were approved by the Department of Buildings; that defendants’ plans show a proposal to construct said building flush on the rear lot line of the Boxy property contiguous with the rear of the Annex up to an elevation of 89 feet; and that above said elevation the setbacks would provide such a small open unoccupied space, that the building would occupy most of the “ restricted area ” as defined in the Carbarn-Boxy Agreement.
Finally the first cause of action alleges that the proposed construction is in violation of the Carbarn-Boxy Agreement, that it would obstruct light, air and view, destroy and diminish rentals and market value, impair use and enjoyment, and cause irreparable damage.
Defendants’ objection amounts to this: that what constitutes the “restricted area” according to the agreed formula does not appear from the complaint inasmuch as the complaint does not state the number of feet “ required by law or municipal ordinance for a rear yard or court ’ ’. What the law requires for a rear yard or court is, in this case, a matter of proof, not pleading. At the trial the burden will be on plaintiffs to prove such requirements of law. For the purposes of pleading it is sufficient to allege — as plaintiffs do here— (1) the existence of an agreed “restricted area”, which, in this case, is easily ascertainable by reference to sections 12 and 18 of the New York City Zoning Besolution, applicable to an Area B District; and (2) facts showing the proposed construction by defendants on that easily ascertainable “restricted area”. And, if it is necessary in order to determine the number of feet required by law for a court or yard, the court may even now take judicial notice of the requirements of the New York City Zoning Besolution.
The first cause of action pleads a violation of an agreement, not a violation of zoning laws. The allegation as to what constitutes the ‘ ‘ restricted area ’ ’ as prescribed by the agreed formula, and the allegation that defendants propose to build within that “ restricted area ”, are both allegations of ultimate fact. Whether the (‘ restricted area ’ ’ upon which the CarbarnBoxy Agreement bars construction is to be considered as relating to a rear yard or court for the Taft Annex or as relating to a rear yard or court for a building on the Boxy property is a matter depending on the proof. For the purpose of pleading it is sufficient that the complaint alleges that the parties entered *372 into the agreement “ in order to provide additional rear yard or court area for the Hotel Taft Annex ’ ’. The first cause of action is good.
The second cause of action repeats the first 18 paragraphs alleged in the first cause of action.
It further pleads that the Department of Buildings approved the plans for the construction of the Hotel Taft Annex and issued a building permit therefor in reliance upon the CarbarnBoxy Agreement; that in the absence of said Agreement, the Taft Annex would not have had a court satisfying the requirements of sections 12 and 18 of the Zoning Resolution; and that as a consequence, the 6 ‘ restricted area ’ ’ defined in the CarbarnRoxy Agreement upon which no building could be erected became dedicated as the court space for the Hotel Taft Annex and no building can legally be erected thereon. It is also alleged that defendants’ plans, their permit and their proposed office building are illegal and will violate the Zoning Resolution, and more particularly sections 1 (1), 1 (b) (b), 10,12,18,19 and 20 thereof, in that the proposed building (1) would occupy the “ restricted area ” dedicated as a court for the Taft Annex and (2) would reduce the court space for the Annex below the requirements of the Zoning Resolution.
While the first cause of action is based on the threatened violation of a restrictive agreement, the second cause of action alleges that defendants’ building will violate the zoning laws to plaintiffs’ detriment.
The second cause of action proceeds on the theory that the Carbarn-Roxy Agreement made up for the deficiency in court area on the Taft property by dedicating a portion of the Roxy property as court space for the benefit of the Taft Annex. Accordingly, it is pleaded, defendants’ building, which is to be constructed on said portion of the Roxy property dedicated as a court for the Taft Annex, will violate the zoning laws.
It is well established that owners and lessees of adjoining land — like the present plaintiffs — may enjoin the erection of structures on neighboring parcels where that construction would create zoning violations.
The allegations which defendants criticize as conclusions of law, unsupported by statements of fact, are allegations of ultimate fact. The complaint states facts sufficient to constitute a second cause of action.
The third cause of action alleges that Rock-Time, Inc. owned certain described property contiguous to the Roxy property on the east; that said property (referred to as the 16 Time and Life property ”) is located in a Class Two Height District; and *373 that a 48-story building — the Time and Life Building — is constructed thereon.
It is further alleged that on November 4, 1957, Rockefeller Center, Inc. (the then owner of the Roxy property) entered into an agreement with Rock-Time (called the “ Tower Privileges Agreement ”), a copy of which is annexed to the complaint ; that by the Tower Privileges Agreement, Rockefeller Center, Inc., consented to the inclusion of the Roxy property in computing the area of the Time and Life property for the purpose of determining the height, bulle and location of the then proposed Time and Life Building under the provisions of subdivision (d) of section 9 of the Zoning Resolution; that absent said Agreement the proposed Time and Life Building could only have been erected to a height of 169 feet under subdivision (g) of section 8 of the Zoning Resolution; that on the basis of the Tower Privileges Agreement Rock-Time prepared plans to construct the Time and Life Building to an elevation of 644 feet under subdivision (d) of section 9; and that the Department of Buildings approved these plans and issued a permit for the construction of the building in reliance upon the Tower Privileges Agreement.
The complaint further alleges that, thereafter, Rock-Time included the area of the Roxy property in computing the area of the Time and Life property, and constructed the Time and Life Building to a height of 644 feet; and that by reason of the foregoing, all of the air space above 169 feet on the Roxy property was dedicated to the Time and Life Building under the Zoning Resolution of the City of New York; and that no building could legally be erected above that elevation on the Roxy property.
It is further alleged that the approval of defendants’ plans, the issuance of a building permit to them, and their office building would be illegal and would violate subdivision (g) of section 8, subdivision (d) of section 9 and section 20 of the Zoning Resolution, because said office building would occupy air space dedicated to the Time and Life Building and would nullify the effect of the inclusion of the area of the Roxy property in computing the area of the Time and Life property under subdivision (d) of section 9; and that the construction of defendants’ office building to an illegal height will obstruct the light, air and view enjoyed by plaintiffs’ hotel, and will destroy its market and rental value.
What plaintiffs rely upon in their third cause of action is a threatened violation of the zoning laws by defendants’ proposed office building, which is planned to be constructed more than 79 feet above permissible zoning limits. That cause of action *374 is not predicated upon a breach by defendants of the Tower Privileges Agreement. Its theory is that, as constructed and located on its lot, the Time and Life Building could only have been erected to a height of 169 feet under subdivision (g) of section 8 of the Zoning Resolution; that said building took advantage of the exception to the height restrictions in subdivision (d) of section 9 — which, in general, permits a building to be erected to any height if its area at a given level does not exceed 25% of the lot — by combining the area of its lot with the area of the Roxy property as the Tower Privileges Agreement authorized; that the Department of Buildings approved this combination and that, as a result, the Time and Life Building was constructed to a height of 644 feet.
The complaint alleges that defendants would be in violation of the zoning laws if they were now permitted to build in the very same air space above 169 feet on the Roxy property, which has been dedicated under the zoning laws to the Time and Life Building, and which said buildings utilized — by resort to subdivision (d) of section 9 of the Zoning Resolution — to achieve an exemption from the basic height limitations otherwise applicable.
The basic principle here involved — that the zoning laws will be violated if a building is erected in space dedicated to enable another building to qualify under those laws — is well recognized (see Latham Squire’s, Zoning in New York [1948], p. 25; Bassett, Zoning [2d ed. 1940], pp. 62-63); and, as has already been pointed out, property owners who will suffer injury by threatened violations of the zoning laws on adjacent property, may sue to enjoin such violations (see, e.g., Daub v. Popkin, 5 A D 2d 283, 286-287; 2 Rathkopf, Law of Zoning and Planning [3d ed.], p. 245).
Defendants’ contention that plaintiffs may not avail themselves of the Tower Privileges Agreement because it does not relate to plaintiffs’ property and because plaintiffs are not legally beneficiaries thereof, is without merit. Plaintiffs do not rely on the “third party beneficiary” rule; they allege facts showing that defendants’ proposed construction would itself violate basic zoning principles and subdivision (d) of section 9 of the Zoning Resolution. Defendants’ further claims that the allegations in this cause of action contain conclusions are not well taken. The allegations criticized are conclusions of ultimate fact amply supported by other statements of fact and by reference to the zoning laws as to which the court — on the hypothesis that the allegations might otherwise be insufficient — takes judicial notice. The third cause of action is good.
*375 Defendants’ final claim that the complaint is defective because it does not name the persons comprising the plaintiff partnerships, is not well taken.
Section 222-a of the Civil Practice Act, enacted in 1945, authorizes partners to sue in the partnership name. The Court of Appeals has indicated that by reason of section 222-a, a partnership “ for purposes of pleading” is to be regarded as a separate legal entity (see Ruzicka v. Rager, 305 N. Y. 191, 197). Since a partnership is a distinct legal entity for such purposes, the complaint obviously need not supply the names of each partner thereof. The complaint here sufficiently alleges the due existence and organization of each of the two partnership entities suing as plaintiffs, and their respective addresses. If defendants should require the names of the partners, they may obtain them through a bill of particulars, or at any other time on application to the court showing a need therefor.
The motion is in all respects denied, with leave to defendants to serve an answer within 20 days after service of a copy of the order to be entered hereon with notice of entry.